**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **RICKEY A. NIBLET,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:10-CV-0120-K |
| ) | |
| **GULFSTREAM AEROSPACE,** ) | |
| Defendant. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case was referred to the United States Magistrate Judge for pretrial management. On June 9, 2010, Defendant Gulfstream Aerospace ("Defendant") filed a Motion to Stay Judicial Proceedings and Compel Arbitration or, in the Alternative, to Transfer Venue (doc. 15). Plaintiff Rickey A. Niblet ("Plaintiff") filed a timely response (doc. 22). Defendant filed a reply (doc. 24).

**Background**

Plaintiff was a full-time, regular employee of Defendant at its Brunswick, Georgia facility from August 6, 2007 to February 6, 2008, when Defendant discharged him. (Def.s App. 002.) Plaintiff never worked for Defendant in Texas, or anywhere else except the Brunswick location. (*Id*.) Plaintiff alleges that Defendant discharged him because of his race, black, and that "racial disparity and inequality existed at the Brunswick facility." (Resp., doc. 22 at 2.)

**Mandatory Arbitration**

Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

>irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 677 (5th Cir. 1999). Georgia courts apply the federal substantive law of arbitrability and state law principles of contract law. *Autonation Fin. Serv. Corp. v. Arain*, 592 S.E. 2d 96, 98 (2003) (finding that whether the Georgia Code or the FAA applies, both require that due regard be given to the "policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration" ) (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)). Texas law also favors arbitration agreements. *See Ford v. NYLCare Health Plans of the Gulf Coast*, *Inc.*, 141 F.3d 243, 250 (5th Cir. 1998) (noting "Texas courts favor arbitration") (*citing Monday v. Cox*, 881 S.W.2d 381, 384 (Tex. Civ. App.–San Antonio 1994, writ denied)); *see also Cantella & Co., Inc. v. Goodwin*, 924 S.W. 2d 943, 944 (Tex. 1996) (stating "federal and state law favor arbitration").

A court must defer claims to arbitration if (1) a valid agreement to arbitrate exists between the parties; (2) the claims in question fall within the scope of the arbitration agreement; and (3) no legal constraints external to the parties' agreement foreclose the arbitration of the claims. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). Plaintiff admits that his Title VII racial discrimination claims are subject to an arbitration agreement which he acknowledged and to which he agreed. (Resp., doc. 22 at 1 ("agrees with the POWERS

2

declaration and the INTRODUCTION and the Appendix submitted by Defendant").) Nevertheless, in spite of Plaintiff's admissions, he contends that (1) the arbitration agreement does not apply to him because he is a *former* rather than a *current* employee and (2) because Defendant agreed to hire him at the Dallas location if he could pass a telephone interview, but he was determined ineligible for rehiring because he applied for the job within one year of his discharge. (*Id*. at 1-2.) Defendant rebuts these arguments in its reply. (Reply, doc. 24 at 2-4.)

## Analysis

The "Purpose" section of Defendant's Dispute Resolution Policy ("DRP") to which Plaintiff agreed provided that it "applie[d] to all employees who were employed by the Company while [the DRP] or any version [of it] was in effect." (Def.'s App. 005.) Niblet was an employee while the DRP was in effect. (*Id*. 002.) The DRP applies to (1) "claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges)" and (2) "employment discrimination and harassment claims, based on, for example . . . race . . . ." (*Id*. 006.) Additionally, Plaintiff's employment application, signed June 19, 2007 states, "I agree to the exclusive resolution of all claims arising out of or relating to my application for employment, employment, or termination of employment by the Company by the procedures set forth in the Company's Dispute Resolution Policy." (*Id*. 021.)

Although the DRP outlines certain administrative steps that must be completed, it also provides that Defendant can elect to bypass one or more steps prior to arbitration for disputes with former employees. (Id. 005.) Accordingly, Defendant has waived all the preliminary levels and time limits set out in the DRP and requests the Court to allow it to take Plaintiff's claims directly to arbitration. Plaintiff's argument that the DRP does not cover him because he is a former

3

employee is without merit. The DRP clearly covers all of Plaintiff's race discrimination claims against Defendant, including his discharge.

Plaintiff claims that his post-discharge contacts with Gulfstream's Dallas office preclude enforcement of the arbitration agreement. Plaintiff states that after his discharge, he:

> made his case known at the Dallas corporate headquarters and had several conversations with several managers, including HR Director Tongie Leonce, and a settlement was reached. An agreement was made that a like job offer would be granted at the Dallas facility if Niblet could pass a phone interview with the Interior supervisor who had an opening. Niblet passed, the offer was made but during the hiring process, Niblet was informed that he would not be hired because the Policy stated: if an employee has been terminated, he/she were [sic] ineligible for re-hire for a period of one year.

(Doc. 22, Response at 2.)

Plaintiff claims that the Dallas contact is evidence of Defendant's "blatant racial disparity and inequality." (*Id.*) He claims that Defendant's policy "has hindered relief in this injustice." (*Id.*) Plaintiff wants the Court to determine that he did not violate company policy. (*Id.* at 3.) Plaintiff believes that referral to arbitration gives Defendant an unfair advantage. For Plaintiff's edification:

> Arbitration is a mode of settling differences through the investigation and determination by one or more neutral persons selected for that purpose. The disputed matter is submitted to them by the contending parties for a decision and award in lieu of a judicial proceeding. The object of arbitration is the final disposition of differences between parties in a faster, less expensive, more expeditious, and perhaps less formal manner than is available in ordinary court proceedings.

Am. Jur. 2d, Arbitration and Award § 52. "Generally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance ... [f]airness objections should generally be made to the arbitrator subject only to limited post-arbitration judicial review as set forth in section 10 of the FAA." *See Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940-41 (4th Cir.

4

1999)). .

The Court finds that Plaintiff's allegations of his contact with Defendant's Dallas office after his discharge do not alter the legal conclusion that Plaintiff's allegations in his Complaint are covered by the DRP and must be arbitrated.

Defendant contends that this Court should stay the trial of this action until arbitration has been completed. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. If the parties have entered a written agreement to arbitrate and the issues raised are within the reach of that agreement, the court should grant the stay under § 3. *See Midwest Mechanical Contractors, Inc. V. Commonwealth contr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986). The arbitration clause in this case is broad, and Plaintiff's claims are arbitrable; therefore, the District Court should stay this proceeding and compel Plaintiff to submit his claims to arbitration.

### **Recommendation**

The Court recommends that the District Court grant Defendant's motion to compel arbitration (doc. 18). The Court further recommends that the District Court (1) compel arbitration; (2) stay the judicial proceedings; and (3) administratively close this case to be reopened at the request of any party following the completion of arbitration. Additionally, the Court further recommends

that the District Court deny as moot Defendant's alternative motion to transfer venue.

SO RECOMMENDED, June 29, 2010.

_____
**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).